# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENESCO GROUP INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05 C 4371 |
| JIM SHORE DESIGNS, INC., et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN

This matter is before the court on Defendant Department 56, Inc.'s ("D56") motion to dismiss Count V of the amended complaint, and in the alternative for summary judgment on Counts V and VI. For the reasons stated below, we deny the motion to dismiss and deny the motion for summary judgment without prejudice.

## BACKGROUND

Plaintiff, Enesco Group, Inc. ("Enesco"), distributes giftware and home and garden products to a wide variety of retailers worldwide. Enesco alleges that it entered into a license agreement ("Agreement") with an artist, Jim Shore ("Shore"), to have the exclusive right to sell his artwork, with only a limited exception. Enesco

1

further alleges that, pursuant to the license agreement with Shore, Enesco employees worked with Shore to develop a line of garden products and seasonal figurines. Enesco claims that it has provided Shore with marketing support including marketing staff, specialty catalogs, and funding for Shore's personal appearances and tours. Enesco claims that this year alone it has spent over $700,000 promoting the Shore line. Enesco alleges that pursuant to terms of the Agreement, it is the exclusive licensee with respect to all Shore products, with the exception of bolt fabric as set forth in Schedule III, and that it has the right to enforce the infringement of trademarks and copyrights for all Shore products covered by the Agreement.

In the spring of 2004, Shore allegedly licensed Defendant Sunshine Products, Inc. ("Sunshine") to use some of his works in connection with neckties, scarves, and jewelry. Sunshine then entered into an agreement with D56 to distribute the Shore products made by Sunshine. Enesco claims that D56 has been disseminating marketing materials that give the impression that D56 has the exclusive right to sell the Jim Shore line of scarves, neckties and jewelry. Enesco also claims that at trade shows and in sales calls, D56 has been making representations to Enesco customers that gives the impression that D56 is an exclusive licensee of Jim Shore and that Enesco no longer has exclusive rights under the Agreement. Enesco also claims that D56 has been making representations to the members of the trade that in the future, in addition to scarves, neckties and pins, it will be expanding the Shore line to include items such as Shore figurines on an exclusive basis.

Enesco also alleges that D56 has recently been marketing products that incorporate or display derivative works of products sold by Enesco. Enesco claims that its sales representatives reported customer inquiries into whether Enesco still has the Shore line, and that customers had made comments regarding the similarity of Enesco and D56 products. Finally, Enesco claims that the inferior quality of artwork allegedly copied from Enesco's products and displayed on D56's pins will negatively impact the brand and will jeopardize Enesco's investment in the brand.

Enesco included in its amended complaint a breach of contract claim against Shore (Count I), a tortious interference with a contract claim against Sunshine (Count II), a civil conspiracy claim against Defendant Kevin Knowles ("Knowles") and Sunshine (Count III), an inducement to breach duty of loyalty claim against Knowles and Sunshine (Count IV), an unfair competition claim based upon 15 U.S.C. § 1125(a) of the Lanham Act against D56 (Count V), and an unfair competition claim based on the Illinois Uniform Deceptive Trade Practice Act, 815 ILCS 510/1 *et seq.* and Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/12 *et seq.* against D56, Knowles, and Sunshine (Count VI). D56 now moves to dismiss the claims brought against it in Count V and, in the alternative, for summary judgment on Counts V and VI.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil

Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *See also Baker v. Kingsley,* 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead

4

conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimum notice of claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirement merely "by attaching bare legal conclusions to narrated facts which fail to outline bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for

summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

D56 argues that the court should dismiss the false advertising Lanham Act claim against it (Count V). D56 also argues that the court should grant summary judgment for D56 on the Lanham Act claim (Count V) and on the claims contained in Count VI.

### I. Motion to Dismiss Lanham Act Claim

D56 argues that the court should dismiss the Lanham Act false advertising claim due to certain deficiencies in the complaint. Section 43(a) of the Lanham Act ("Section 43(a)") provides, in relevant parts, that:

> (1) Any person who, on or in connection with any goods, services, or any container for goods, uses in commerce any word, term, name, symbol, or device,

or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C §1125(a).

A. Scope of Act

D56 first argues that the alleged statements at issue do not fall within the scope of Section 43(a). D56 argues that nothing in its written advertisement of Shore products relates to the "nature, characteristics, qualities or geographic origin" of the goods it sells. D56 argues that the alleged statements instead relate to the relationship that D56 had with Shore and Sunshine and to the products D56 is authorized to sell pursuant to that relationship. However, as is indicated in Section 43(a) cited above, Section 43(a) is not limited to statements regarding the "nature, characteristics, qualities or geographic origin" of goods. Section 43(a) also protects against false or misleading statements that "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's . . . commercial

activities." *Id.* Contractual business relationships, such as the ones between Shore and Enesco and between Shore, D56, and Sunshine are part of the above mentioned companies' and Shore's commercial activities. Thus, if D56 has made false statements that give a certain impression concerning its exclusive right to sell Shore products or give an impression that Enesco did not have an exclusive right over Shore products and the statement was proven to be false or misleading, D56 would have made a false or misleading statement about commercial activities that falls within the scope of Section 43(a). Therefore, D56 has not shown that its alleged misconduct fell outside the scope of Section 43(a).

### B. Oral Statements

D56 argues that the oral statements allegedly made by its salespersons do not constitute "commercial advertising" under Section 43(a). In support of its argument, D56 cites a previous decision by this court, which stated that isolated oral statements by sales people do not amount to "commercial advertising or promotion." *Chicago Consulting Actuaries, LLC v. Scrol,* 2005 WL 819555, at *3 (N.D. Ill. 2005). D56 also cites a Seventh Circuit decision, which held that "advertising is a form of promotion to anonymous recipients, as distinguished from a face-to-face communication" and that a "person-to-person pitch by account

8

executive is not advertising." *First Health Group Corp., v. BCE Emergis Corp.*, 269 F.3d 800, 803-04 (7th Cir. 2001). However, the situation in the instant case is distinguishable from *Chicago Consulting* and *First Health Group* in that the alleged oral statements by D56 were not merely isolated person-to-person conversations as were at issue in those cases. *Id.*; *Chicago Consulting Actuaries, LLC*, 2005 WL 819555, at*3. Instead, in the instant action Enesco alleges that, in addition to sales calls to Enesco customers, D56 employees have been making representations to customers at trade shows. (A Compl. Par. 21). Such broad-based statements to anonymous customers at trade shows is far beyond isolated person-to-person sales pitches. Also, in *First Health*, which is cited by D56, the court acknowledged that marketing in trade magazines constitutes "advertisement" under the Lanham Act. *Id.* at 803. Advertising during trade shows is directed at a broad-based audience and serves the same purpose as advertising in trade magazines, and thus they both would logically constitute "commercial advertising" under the Lanham Act. Therefore, the oral statements allegedly made by D56 employees at trade shows do not fall outside the scope of Section 43(a).

### C. Specificity of Allegations

D56 next argues that Enesco has not pled with sufficient specificity to state a

9

false advertising claim. D56 begins by arguing that "Enesco has not alleged all the required elements" for the false advertising claim. (Mot. 6). However, Enesco's reliance upon the pleading of elements is misplaced, since as is explained above, under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *Sanjuan*, 40 F.3d at 251(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). D56 argues, for example, that Enesco has failed to allege that the alleged deception was material to consumers' purchasing decisions, which is an element for a Section 43(a) claim. However, in accordance with the notice pleading standard, it can be inferred from the allegations presented that Enesco is contending that the alleged statements made by D56 were material to consumers' purchasing decisions. Enesco is not required under the notice pleading standard to specifically allege that a statement was material.

D56 next proceeds to argue in the portion of its memorandum devoted to its motion to dismiss that "[a]s a matter of law, and of common sense the alleged statements are not material and not actionable." (Mot. 7). However, at the pleadings stage on a motion to dismiss, the court cannot evaluate the evidence and make legal

findings as D56 requests. D56's request of the court to employ "common sense" asks the court to look beyond the allegations in the amended complaint, and make conclusions that are premature at this juncture. Such arguments, although improper in the motion to dismiss, would be appropriate for a motion for summary judgment. Therefore, we deny D56's motion to dismiss Count V.

## II. Motion for Summary Judgment

D56 argues that the court should find in its favor on Counts V and VI as a matter of law. However, D56's arguments are premature. For instance, D56 argues that its written advertisement that refers to the exclusive selling of the "Signature Series" is not a false statement, because the exhibits and certain declarations filed by D56 show that it had a contract with Shore and Sunshine and that Enesco does not have a line entitled the "Signature Series." However, D56 we cannot, at this stage of the proceedings, based upon the undeveloped record before us, excuse D56 from liability as a matter of law simply based upon the isolated fact that Enesco does not carry a line entitled "Signature Series." Although this fact may be relevant in a future motion for summary judgment, other issues are also pertinent such as the effect that the alleged oral and written statements by D56 employees had on consumers. We note that in the instant action Enesco has made reference to only

isolated incidents of customers that allegedly indicated that they were confused, but we cannot delve into the sufficiency of the evidence at this stage of the proceedings.

We are not finding that there are material disputed facts in this case that cannot be resolved in a motion for summary judgment. We simply are finding that the record as it now stands has not been sufficiently developed in regard to the pertinent issues. D56 has brought the instant motion prior to the main discovery in this action and thus the motion is based solely upon a few isolated depositions and various declarations filed by D56. Issues such as whether D56's statements were false or misleading, whether they were material, and whether Shore had the right to authorize D56 to sell the "Signature Series" cannot be resolved on the limited record that is currently before the court. Therefore, we deny D56's motion for summary judgment without prejudice. After the parties complete discovery, they will be provided with an opportunity to file dispositive motions.

## CONCLUSION

Based on the foregoing analysis, we deny D56's motion to dismiss and deny D56's motion for summary judgment without prejudice.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 6, 2005